IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 08-00140-04-CR-W-NKL |
| ABDULLAH TAYLOR, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**TO ACCEPT DEFENDANT'S GUILTY PLEA**

On December 16, 2008, I held a change-of-plea hearing after this case was referred to me by United States District Judge Nanette Laughrey. I find that defendant's plea was voluntary and therefore recommend that it be accepted.

## I. BACKGROUND

On June 3, 2008, an indictment was returned charging defendant with one count of conspiracy to possess with intent to distribute Oxycontin/Oxycodone, Morphine, Demerol/Meperidine, and Hydromorphine/Fentanyl, in violation of 21 U.S.C. § 846; one count of robbery of a pharmacy, in violation of 18 U.S.C. § 1951; one count of brandishing a firearm during a drug trafficking crime and a crime of violence, in violation of 18 U.S.C. § 924(c); and one count of possessing a firearm after having been convicted of felonies, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Judge Laughrey referred this case to me for conducting a change-of-plea hearing and issuing a report and recommendation on

whether to accept the plea. The hearing was held on December 16, 2008. Defendant was present, represented by Mark Thomason. The government was represented by Assistant United States Attorney David Barnes. The proceedings were recorded and a transcript of the hearing was filed on December 18, 2008.

## *II. AUTHORITY OF THE COURT*

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. United States v. Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991), Gomez v. United States, 490 U.S. 858

2

(1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of de novo review by a district judge preserves the structural guarantees of Article III. United States v. Torres, 258 F.3d at 795. Applying the Peretz holding and the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing United States v. Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting United States v. Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case and controversy clause. Id. Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings

3

and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the district court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### *III. FINDINGS OF FACT*

1. On June 3, 2008, an indictment was returned charging defendant with one violation of 18 U.S.C. § 1951 by robbing a pharmacy, and with one violation of 18 U.S.C. § 924(c) by brandishing a firearm during the pharmacy robbery (Tr. at 4-6).

2. The statutory penalty for count two, the robbery count, is not more than 20 years in prison, not more than $250,000 fine, not more than five years supervised release, a $100 special assessment, and the possibility of restitution (Tr. at 6). The statutory penalty for count two, the gun count, is not less than seven years and not more than life in prison, to run consecutive to any other sentence, not more than $250,000 fine, not more than five years supervised release, and a $100 special assessment (Tr. at 6-7).

4

3. Defendant was advised of the following:

    a. That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 7);

    b. That he has the right to assistance of counsel throughout the trial (Tr. at 8);

    c. That defendant is presumed innocent, and the government has the burden of coming forward to prove defendant's guilt beyond a reasonable doubt (Tr. at 8);

    d. That defendant's attorney would have the opportunity to cross examine the government witnesses (Tr. at 8-9);

    e. That defendant would have an opportunity to subpoena witnesses to testify on his behalf (Tr. at 9);

    f. That defendant would have an opportunity to testify on his own behalf, but that he would not be required to and the jury would be instructed that they could not draw an adverse inference if he chose not to testify (Tr. at 9); and

    g. That defendant would have an opportunity to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 10).

4. Defendant was informed and understood that by pleading guilty, he is giving up all of the rights described above (Tr. at

10-11).

5.  Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 11). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 11). Defendant stated that he understood (Tr. at 11).

6.  Defense counsel had full access to the government's file and agreed that his review of the evidence and his independent investigation confirmed that the facts were as alleged by the government and that it is in the defendant's best interest to plead guilty (Tr. at 11-12).

7.  Government counsel stated that its evidence would show that:

> This case . . . revolve[s] around the robbery of a wholesale pharmacy in southern Kansas City, at the old Red Bridge Bowling Alley, in . . . May of 2008. Your Honor, we would have evidence that it was, in fact, robbed and Mr. Gianakon was, in fact, assaulted at the pharmacy that is, in fact, does wholesale business in terms of both buying and selling controlled substances, primarily morphine-based Oxycontin and other morphine-based, and synthetic morphines across state lines. Additionally, Your Honor, we received information that a particular individual was involved in that crime. He had an open case in another jurisdiction. A search warrant was obtained in that other jurisdiction and was executed. That individual was caught with narcotics believed to be from the Omnicare Pharmacy. He was advised of his Miranda rights and cooperated extensively implicating Mr. Taylor here and other individuals. The videotapes of the robbery were recovered as well making -- narrowing the identification possibilities of Mr. Taylor. Mr. Taylor, quite frankly, is not a small man. He's a large, muscular man and the tape bears that out with in terms of someone

6

> being involved in one of the robberies. Surveillance was set on another house. Search warrants were executed and Mr. Taylor was arrested on the scene. There were evidence of robberies, including tape, gloves, receipts for such items, narcotics from the pharmacy and firearms matching the shape and type of those found on the videotape. Mr. Taylor was, in fact, arrested, Mirandized and gave a statement implicating himself. Other individuals were Mirandized gave statements implicating themselves and Mr. Taylor. So, in short, Your Honor, we'd have physical evidence from the robbery, a videotape that memorialized the robbery, and individuals involved in the robbery itself implicating Mr. Taylor, and Mr. Taylor's own admissions. . . . It's the United State's position that the videotape depicts Mr. Taylor brandishing the firearm.

(Tr. at 12-14).

8. Defendant was placed under oath (Tr. at 12) and admitted the following: Sometime around May 11, 2008, defendant went with one or more people to Omnicare Pharmacy located in Kansas City. He conducted a robbery of that facility in order to gain access to controlled substances from the presence of Harry G. Gianakon, an employee. He too the controlled substances by using threats, and he brandished a firearm when he committed the robbery. Defendant knew it was against the law. He does not dispute that the pharmacy was involved in commerce (Tr. at 14-16).

9. Defendant is familiar with the plea agreement, discussed it with his attorney, and understands it (Tr. at 17). In addition, I went over the plea agreement with the defendant (Tr. at 17-22).

7

10. No one made any threats or promises to get defendant to plead guilty (Tr. at 22).

11. Defendant is satisfied with the advice and guidance he has received from Mr. Thomason (Tr. at 22). There is nothing he wanted Mr. Thomason to do that Mr. Thomason did not do, and there is nothing Mr. Thomason has done that defendant did not want Mr. Thomason to do (Tr. at 22).

12. Defendant is 28 years of age and has a 12th grade education (Tr. at 22-23). Defendant has no mental health or substance abuse issues (Tr. at 23).

13. Defendant tendered a plea of guilty to the crimes charged in counts two and three of the indictment (Tr. at 24).

## IV. ELEMENTS OF THE CHARGED OFFENSES

The elements necessary to sustain a conviction for robbery of the pharmacy are: (1) the defendant induced Mr. Gianakon to part with controlled substances; (2) the defendant voluntarily and intentionally did so by extortion -- that is, through the wrongful use of actual or threatened force or violence or through the wrongful use of fear, and (3) the defendant's action affected commerce in some way or degree. Eighth Circuit Model Criminal Jury Instruction 6.18.1951.

The elements necessary to sustain a conviction for brandishing a firearm during a drug trafficking crime or a crime of violence are: (1) the defendant committed the crimes of

8

robbery of a pharmacy, and (2) the defendant knowingly possessed a firearm in furtherance of that crimes. Eighth Circuit Model Criminal Jury Instruction 6.18.924C.

## V. CONCLUSION

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a Magistrate Judge for issuance of a report and recommendation on whether defendant's guilty plea should be accepted.

2. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crimes charged in counts two and three of the indictment.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting defendant's guilty plea and adjudging defendant guilty of the offenses charged in counts two and three of the indictment.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections.

                               */s/ Robert E. Larsen*
                               ROBERT E. LARSEN
                               United States Magistrate Judge

Kansas City, Missouri
December 19, 2008